UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARCUS P. WILSON,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

**DECISION & ORDER**
17-cv-6695-JWF

### Preliminary Statement

Plaintiff Marcus P. Wilson ("plaintiff" or "Wilson") brings this action seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his application for Supplemental Security Income. See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket # 13, 16. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 13) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 16) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

### Background and Procedural History

On October 10, 2013, plaintiff protectively filed an application for Supplemental Security Income under Title XVI of the Social Security Act ("the Act"), alleging an onset date of October 10, 2013. Administrative Record, Docket # 9 ("AR") at

269-75. The application was initially denied and plaintiff requested a hearing.

On February 22, 2016, Wilson, represented by counsel, appeared at a hearing before an Administrative Law Judge ("ALJ"). AR at 132-80. Plaintiff and a vocational expert testified at the hearing. On May 3, 2016, the ALJ issued an unfavorable decision. AR at 21-32.

Plaintiff appealed the ALJ's decision to the Appeals Council ("the AC") and the AC denied plaintiff's appeal on August 10, 2017. AR at 1-5. Wilson commenced this action on October 6, 2017. Docket # 1. He filed for judgment on the pleadings on August 4, 2018 (Docket # 13), and the Commissioner filed her motion for judgment on the pleadings on October 3, 2018 (Docket # 16). Plaintiff replied on October 24, 2018 (Docket # 17).

For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. <u>Rivera v. Sullivan</u>, 923 F.2d 964, 967 (2d Cir. 1991).

## Discussion

At the time of the hearing plaintiff was a 35-year-old man suffering from a spectrum of physical and serious non-exertional impairments. He had previously been approved for child disability benefits from 1992-1999. In his adult application, plaintiff was

2

asked to list all of his mental or physical conditions that limit his ability to work. The <u>first</u> condition plaintiff listed was his "[l]earning disability." AR 292. Yet at Step Two of the well-settled five step sequential process to determine eligibility for disability benefits, the ALJ failed to mention, include, or discuss plaintiff's learning disability or intellectual deficits. Plaintiff argues that the failure of the ALJ failed to characterize plaintiff's learning disability and borderline low intelligence as a severe impairment constituted reversible error. For the reasons that follow, I agree.

Although plaintiff bears the burden of proof at Step Two, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." <u>McIntyre v. Colvin</u>, 758 F.3d 146, 151 (2d Cir. 2014) (citing <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir. 1995)). Where a claimant produces some evidence of an impairment, the Commissioner may make a determination of non-disability at Step Two only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." <u>See</u> SSR 85-28, 1985 WL 56856, at *3 (1985).

Plaintiff met the *de minimis* burden at Step Two here. "The purpose of the second step of the sequential analysis is to enable

3

the Commissioner to screen out totally groundless claims." Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 428 (6th Cir. 2007) (internal quotation marks omitted). Here, plaintiff's claim of a learning disability and limited intellectual functioning was far from "groundless." Indeed, the record is replete with evidence to support plaintiff's argument of error by the ALJ.

For example, plaintiff's educational records clearly document his learning disabilities. In 1996, two months before his sixteenth birthday, plaintiff's intellectual capabilities were tested by school officials. IQ testing revealed that plaintiff had "borderline" intellectual functioning with a verbal score of 64, a performance score of 83, and a full-scale IQ of 70. AR at 356. Several months later, he was classified as "Learning Disabled" and his school developed an individualized education program for him. AR at 381. Updated testing when plaintiff was seventeen found his reading and math skills at a fifth-grade level and his writing skills at a third-grade level. AR at 382. Other more recent evidence in the record confirms these deficits. The psychiatric consultative evaluation from Adam Brownfeld, Ph.D., (AR at 445) to which the ALJ gave "significant weight" confirmed that plaintiff was "enrolled in special education classes due to a learning disability" and, upon examination, found plaintiff's attention and concentration to be "[i]mpaired due to limited intellectual functioning" and his cognitive functioning to be "in

4

the borderline range." AR at 442-44. According to Dr. Brownfield, plaintiff's insight and judgment were "poor" and plaintiff was not able to manage his own funds. Id. Consultative examiner Marisela Gomez, M.D. also diagnosed plaintiff with a "[l]earning disability." AR at 451. Furthermore, plaintiff himself told the ALJ about his cognitive deficits and learning disability. He testified that he "always" had "a hard time reading" and that he attended special education classes. AR at 169. He also testified that reading frustrates him and that he would be unable to read the front page of a newspaper and "can't spell the words correctly." AR at 169-70.

These references, made throughout the record, are certainly enough to meet plaintiff's *de minimis* burden at Step Two to show that his intellectual functioning was a severe impairment. Despite making the requisite showing, the ALJ never made any findings regarding plaintiff's learning disability or intellectual functioning. To the contrary, it appears that the ALJ failed to consider plaintiff's documented deficits in cognitive functioning in formulating plaintiff's residual functional capacity ("RFC"). Plaintiff's learning disability is simply not sufficiently accounted for in the assigned RFC.

Not only was plaintiff's learning disability and intellectual functioning not considered in the ALJ's severity determination at Step Two, they were similarly not assessed in conjunction with

5

whether plaintiff's impairments met or medically equaled a listed impairment. According to Listing 12.05 in place at the time the ALJ rendered his decision, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05 (effective Aug. 12, 2015 to May 23, 2016). Plaintiff asserts that, because of the existence of severe physical impairments, he could possibly meet Listing 12.05(C), which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" Id. at § 12.05(C).

In response, the Commissioner argues that remand is not required because (1) plaintiff's IQ test was given to plaintiff two months before his 16th birthday and IQ scores obtained before age 16 are only valid for two years and (2) plaintiff has not "established that he met the requisite deficits of adaptive functioning." See Comm'r's Br. in Supp. of J. on the Pleadings (Docket # 16) at 12. Neither argument is persuasive at this juncture of review of the Commissioner's disability determination. First, as plaintiff correctly points out, the ALJ never discussed plaintiff's learning disabilities or his IQ scores at Step Two.

6

Thus, any effort to impugn the validity of the scores at Step Three seems like impermissible "post hoc rationalizations for agency action." Newbury v. Astrue, 321 F. App'x 16, 18 (2d Cir. 2009) (internal citation and quotation omitted).

Moreover, plaintiff deserves the opportunity to address these arguments on their merits. This Circuit, along with many others, presumes that intellectual disability remains the same throughout an individual's life. Talavera v. Astrue, 697 F.3d 145, 152 (2d Cir. 2012) ("We agree with the majority of our sister Circuits that it is reasonable to presume, in the absence of evidence indicating otherwise, that claimants will experience a fairly constant IQ throughout their lives."); see also Douglass v. Astrue, 496 F. App'x 154, 157 (2d Cir. 2012) ("A claimant's intellectual ability is not typically something that improves with time."). At the very least, the ALJ should have further developed the record. Although the intelligence scores contained in school records were "stale" in the sense that they were achieved by IQ testing a mere two months shy of plaintiff's 16th birthday, they still are material because they compel "the ALJ to order an intelligence exam to assess petitioner's current intelligence level." Swain v. Astrue, No. 12-CV-6233P, 2014 WL 1315399, at *9 (W.D.N.Y. Mar. 31, 2014); see Matta v. Colvin, No. 13-CV-5290, 2016 WL 524652, at *11 (S.D.N.Y. Feb. 8, 2016) ("The ALJ further erred by not obtaining the information or testing required to determine whether

Plaintiff's cognitive disorder was a severe impairment that met or was medically equal to a listing, or otherwise further limited his RFC."); Dufresne v. Astrue, No. 12-cv-49, 2013 WL 1296376, *7-8 (N.D.N.Y. Mar. 8, 2013) (ALJ failed to develop record by ordering intelligence evaluation where record contained evidence of claimant's limited intellectual functioning, including claimant's failure to graduate from high school or obtain GED and opinion of consultative examiner that claimant suffered from cognitive delays and estimating his intelligence to be in the deficient range), report and recommendation adopted, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013); Laveck v. Astrue, No. 10-CV-1355, 2012 WL 4491110, *6 (N.D.N.Y. Sept. 28, 2012) (ALJ failed to develop record by not ordering an intelligence exam where ALJ failed to discuss plaintiff's learning disability, plaintiff testified that she had poor school performance, and consultative psychiatric exam suggested low average cognitive functioning).

Similarly, plaintiff has record evidence to suggest he can meet the requirements of adaptive functioning. "Courts have found circumstantial evidence, such as the following, sufficient to infer deficits in adaptive functioning prior to age 22: evidence a claimant attended special education classes; dropped out of school before graduation; or had difficulties in reading, writing, or math." MacMillan v. Astrue, No. 07-CV-0959 (LEK), 2009 WL 8595781, at *5 (N.D.N.Y. Nov. 17, 2009), Report and Recommendation

adopted by 2009 WL 4807311 (N.D.N.Y. Dec. 7, 2009); see also Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007) (plaintiff's "low-grade dropout and participation in prior special education classes" constituted circumstantial evidence that intellectual disability manifested before age 22); Markle v. Barnhart, 324 F.3d 182, 189 (3d Cir. 2003) (evidence that plaintiff took special education classes, dropped out of high school, "struggled to obtain a GED," and had "not held a job for at least fifteen years" constituted circumstantial evidence of intellectual disability before age 22); Pedro v. Astrue, 849 F. Supp. 2d 1006, 1012 (D. Or. 2011) (where plaintiff was in special education classes, "struggles with reading and writing," "has difficulty completing paperwork and requires assistance from friends," record had "ample circumstantial evidence demonstrating onset of plaintiff's intellectual impairment" before age 22).

Attendance of special education classes or poor reading abilities have been recognized as possible examples of deficits in adaptive functioning. Hochstine v. Colvin, No. 14-cv-916, 2016 WL 3251313, at *3 (W.D.N.Y. June 14, 2016); Johnson v. Colvin, No. 13-CV-1055-JTC, 2014 WL 6883606, at *5 (W.D.N.Y. Dec. 4, 2014); Davis v. Astrue, No. 06-CV-657, 2010 WL 2925357, at *4 (N.D.N.Y. July 21, 2010). Although the ALJ may ultimately conclude on remand that plaintiff's impairments do not meet or equal the Listing, "this possibility does not relieve the ALJ of his obligation to

9

discuss the potential applicability of Listing [12.05C], or at the very least, to provide [plaintiff] with an explanation of his reasoning as to why [his] impairments did not meet any of the listings." Norman v. Astrue, 912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012).

## Conclusion

For the foregoing reasons, the plaintiff's motion (Docket # 13) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 16) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 15, 2019
Rochester, New York